1   Warren Metlitzky (CA Bar No. 220758)
2   Courtney C. Aasen (CA Bar No. 307404)
    CONRAD & METLITZKY LLP
3   Four Embarcadero Center, Suite 1400
    San Francisco, California  94111
4   Telephone: (415) 343-7100
    Email: wmetlitzky@conradmetlitzky.com
5   Email: caasen@conradmetlitzky.com

    Steven Kaufhold (CA Bar. No. 157195)
    KAUFHOLD GASKIN GALLAGHER LLP
    388 Market Street
    San Francisco, California  94111
    Telephone: (415) 445-4621
    Email: skaufhold@kaufholdgaskin.com

6   Maeve L. O'Connor (appearance *pro hac vice*)
7   Elliot Greenfield (appearance *pro hac vice*)
    Morgan A. Davis (appearance *pro hac vice*)
8   DEBEVOISE & PLIMPTON LLP
    919 Third Avenue
9   New York, New York  10022
    Telephone: (212) 909-6000
10  Email: mloconnor@debevoise.com
    Email: egreenfield@debevoise.com
11  Email: mdavis@debevoise.com
12

    Jaren Janghorbani (*pro hac vice* pending)
    Paul Paterson (*pro hac vice* pending)
    Brady M. Sullivan (*pro hac vice* pending)
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    1285 Avenue of the Americas
    New York, New York  10019
    Telephone: (212) 373-3000
    Email: jjanghorbani@paulweiss.com
    Email: ppaterson@paulweiss.com
    Email: bsullivan@paulweiss.com

13  Attorneys for Defendant THE WE COMPANY

    Attorneys for Defendant ADAM NEUMANN

14                 **UNITED STATES DISTRICT COURT**

15               **NORTHERN DISTRICT OF CALIFORNIA**

16                        **OAKLAND DIVISION**

17

18  MALAKYAR VERNET, Individually and
19  on Behalf of All Others Similarly Situated,

20                    Plaintiff,

21          vs.

22  THE WE COMPANY, et al.,

23                    Defendants.

24

25

26

    Master File 4:20-cv-03686-HSG

    **DEFENDANTS THE WE COMPANY AND
    ADAM NEUMANN'S NOTICE OF
    MOTION AND MOTION TO DISMISS
    CONSOLIDATED AMENDED
    COMPLAINT; MEMORANDUM OF
    POINTS AND AUTHORITIES IN
    SUPPORT THEREOF**

    Date:   March 18, 2021
    Time:  2:00 p.m.
    Judge: Hon. Haywood S. Gilliam, Jr.
    Ctrm.: Courtroom 2, Fourth Floor

27

28

1

## **NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on March 18, 2021, at 2 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA, 94612, before the Honorable Haywood S. Gilliam, Jr., The We Company ("WeWork" or the "Company") and Adam Neumann  (collectively, "Defendants") will and hereby do move for an order dismissing the Consolidated Amended Complaint ("CAC") filed by Malakyar Vernet and Henriette Kockum ("Plaintiffs").  This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Morgan A. Davis and exhibits attached thereto, all documents in the Court's file, and any evidence or argument presented on this matter.

Defendants seek a dismissal with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## **STATEMENT OF ISSUES TO BE DECIDED**

The following issues are before the Court in this motion:

(1)  Whether the CAC should be dismissed against WeWork and Adam Neumann for failure to state a claim.

(2)  Whether the CAC should be dismissed because Plaintiffs have failed to plead Article III standing.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 3

I.     THE PARTIES. ........................................................................................................... 3

II.    WEWORK'S HIGH-GROWTH BUSINESS MODEL. ............................................. 3

III.   WEWORK'S RELATIONSHIP WITH SOFTBANK AND ITS IMPACT ON THE COMPANY'S VALUATION. ..................................................................................... 5

IV.   WEWORK'S JANUARY 2019 GLOBAL SUMMIT. ............................................. 6

V.    PLAINTIFFS' EMPLOYMENT AND EMPLOYEE STOCK OPTIONS. ................. 7

VI.   WEWORK'S CANCELLED IPO. ............................................................................ 7

VII.  PLAINTIFFS' CLAIMS. ............................................................................................ 8

ARGUMENT ......................................................................................................................... 8

I.     LEGAL STANDARD. ............................................................................................... 8

II.    THE CAC SHOULD BE DISMISSED FOR FAILURE TO PLEAD CAUSATION. ........ 9

III.   THE CAC SHOULD BE DISMISSED FOR FAILURE TO PLEAD AN ACTIONABLE MISSTATEMENT. ............................................................................ 10

      A.    The June 2016 Statements Are Inactionable Puffery and Were Not False or Misleading When Made. ............................................................................... 11

      B.    Plaintiffs Do Not Adequately Allege that the January 2019 Statements Were False or Misleading When Made. ............................................................ 11

            1.    January 2019 Statements About WeWork's Balance Sheet. ...................... 12

            2.    January 2019 Statements About WeWork's Growth. ................................ 13

            3.    January 2019 Alleged Presentations to Employees. ................................. 14

      C.    Plaintiffs' Causes of Action Do Not Cover "Manipulative Transactions." ........... 15

IV.   COUNT I SHOULD BE DISMISSED FOR LACK OF SCIENTER. ............................. 16

V.    COUNT II SHOULD BE DISMISSED BECAUSE NEUMANN'S STATEMENTS WERE NOT PART OF AN "OFFER" TO SELL SECURITIES AND HE WAS NOT A SELLER OF SECURITIES. ................................................................................ 17

      A.    Plaintiffs Do Not Allege That Neumann Made an "Offer" to Sell Securities. ......... 17

      B.    Neumann Cannot Be Held Liable Because He Did Not Sell Securities. ................. 18

VI.   PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY. ............................. 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**CASES**

*Alameda v. Nuveen Mun. High Income Opportunity Fund,*
   No. 08-cv-3137, 2009 WL 1424529 (N.D. Cal. May 20, 2009) ........................................... 18

*B.C. Turf & Country Club v. Daugherty,*
   210 P.2d 760 (Cal. Dist. Ct. App. 1949) ...................................................................... 18

*Bains v. Moores,*
   172 Cal. App. 4th 445 (Cal. App. Ct. 2009) .................................................................. 16

*Bowden v. Robinson,*
   67 Cal. App. 3d 705 (1977) ........................................................................................... 9

*Cal. Amplifier v. RLI Ins. Co.,*
   94 Cal. App. 4th 102 (2001) ......................................................................................... 16

*Curry v. Yelp Inc.,*
   875 F.3d 1219 (9th Cir. 2017) ...................................................................................... 16

*Daniels-Hall v. Nat'l Educ. Ass'n,*
   629 F.3d 992 (9th Cir. 2010) .......................................................................................... 4

*Goodworth Holdings, Inc. v. Suh,*
   239 F. Supp. 2d 947 (N.D. Cal. 2002) ......................................................................... 16

*Hodges v. Akeena Solar, Inc.,*
   No. 09-cv-02147, 2010 WL 3705345 (N.D. Cal. May 20, 2010) ................................... 10

*In re Rigel Pharm., Inc. Sec. Litig.,*
   697 F.3d 869 (9th Cir. 2012) ........................................................................................ 10

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.,*
   No. 17-cv-05558, 2018 WL 4181954 (N.D. Cal. Aug. 31, 2018) .................................. 10

*Irving Firemen's Relief Ret. Fund v. Uber Techs.,*
   398 F. Supp. 3d 549 (N.D. Cal. 2019) ............................................................................ 9

*Jackson v. Fischer,*
   931 F. Supp. 2d 1049 (N.D. Cal. 2013) .................................................................. 18, 19

*Jackson v. Fischer,*
   No. 11-cv-2753, 2015 WL 1143582 (N.D. Cal. Mar. 13, 2015) .................................... 18

*Khoja v. Orexigen Therapeutics, Inc.,*
   899 F.3d 988 (9th Cir. 2018) .......................................................................................... 3

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ........................................................................................ 3

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ..................................................................................... 17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................................... 9

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ................................................................................ 13-14

*Novak v. United States*,
   795 F.3d 1012 (9th Cir. 2015) ....................................................................................... 9

*Or. Pub. Empl. Ret. Fund v. Apollo Grp., Inc.*,
   774 F.3d 598 (9th Cir. 2014) .................................................................................... 8, 11

*Park v. GoPro, Inc.*,
   No. 18-cv-00193, 2019 WL 1231175 (N.D. Cal. Mar. 15, 2019) ................................ 12

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ........................................................................................ 3

*Philco Invs., Ltd. v. Martin*,
   No. 10-cv-02785, 2011 WL 4595247 (N.D. Cal. Oct. 4, 2011) ................................... 4

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ..................................................................................... 11

*Rich v. Shrader*,
   No. 09-cv-0652, 2010 WL 3717373 (S.D. Cal. Sept. 17, 2010) ................................. 17

*Russian Hill Capital, LP v. Energy Corp. of Am.*,
   No. 15-cv-02554, 2016 WL 1029541 (N.D. Cal. Mar. 15, 2016) ............................... 18

*S.E.C. v. Seaboard Corp.*,
   677 F.2d 1289 (9th Cir. 1982) ..................................................................................... 18

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................................................ 9, 11

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ........................................................................................ 9

*Valley Surgical Center LLC v. Cty. of Los Angeles*,
   No. 13-cv-02265, 2015 WL 3825310 (C.D. Cal. June 18, 2015) ............................... 13

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785, 807 (N.D. Cal. 2019) ........................................................... 12, 13

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................................................ 15

*Viterbi v. Wasserman*,
    191 Cal. App. 4th 927 (2011) ................................................................................................... 9

*Weinstein v. Appelbaum*,
    193 F. Supp. 2d 774 (S.D.N.Y. 2002) ................................................................................... 11

*Yourish v. Cal. Amplifier*,
    191 F.3d 983 (9th Cir.1999) ................................................................................................... 12

*Zakinov v. Ripple Labs, Inc.*,
    No. 18-cv-06753, 2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ............................................ 18

**STATUTES, REGULATIONS AND CONSTITUTIONAL PROVISIONS**

17 C.F.R. § 240.10b-5(a) ............................................................................................................... 15

2015 Cal. Stat., ch. 190 (A.B. 1517) ............................................................................................. 15

Cal. Corp. Code § 25017(b) ........................................................................................................... 18

Cal. Corp. Code § 25400(d) ...................................................................................................... 2, 15

Cal. Corp. Code § 25401 ..................................................................................................... 2, 15, 17

Cal. Corp. Code § 25500 ....................................................................................................... 2, 9, 16

Cal. Corp. Code § 25501 .................................................................................................................. 2

Cal. Corp. Code § 25504 ............................................................................................................... 19

U.S. Const. art. III .............................................................................................................. 2, 9, 11

**RULES**

Fed. R. Civ. P. 9(b) .......................................................................................................... 8, 10, 14

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 3

**OTHER AUTHORITIES**

3 Alan S. Gutterman, *Cal. Transactions Forms--Bus. Entities* § 11:133 (2020) .......................... 12

Cal. Dep't of Corps., Commissioner's Op. No. 76/13C, 1976 WL 4003 (June 15, 1976) ........... 18

Conrad & Metlitzky
LLP

**PRELIMINARY STATEMENT**

Plaintiffs' claims are a misguided attempt to transform WeWork's cancelled IPO into a claim for securities fraud under California law.  After its founding in 2010 by Adam Neumann, WeWork experienced a decade of tremendous success and rapid growth, resulting in a company with tens of thousands of employees and an implied valuation of $47 billion in advance of a planned 2019 IPO.  That IPO never occurred.  WeWork's prospectus, issued on August 14, 2019, was met with widespread criticism regarding the rate at which the Company was expending cash, as well as concerns about Neumann's dealings with the Company.  WeWork subsequently withdrew its prospectus, and it remains a private company today.  In the wake of the cancelled IPO, WeWork's implied valuation declined sharply.

Although these events were disappointing for WeWork security holders, they are not a basis for a securities fraud claim.  Neither is the grab bag of Neumann's statements cited in the CAC, which were made months – and in some cases, *years* – before the withdrawn prospectus and cancelled IPO.  Plaintiffs' attempt to stitch together these isolated statements and events results in a pleading that is fundamentally incoherent and legally deficient in multiple respects.  Perhaps the most glaring deficiency is the absence of any causal connection between Neumann's alleged misstatements and Plaintiffs' alleged injury.  In stark contrast to a typical securities class action, WeWork's stock was never listed on an exchange, and therefore its valuation was not determined by market trading in response to public information.  Instead, as Plaintiffs acknowledge, the $47 billion ($110 per share) implied enterprise valuation that Plaintiffs challenge was based solely on an investment by SoftBank.  Plaintiffs cannot even allege that they purchased WeWork stock at that allegedly inflated valuation:  as employees who joined the Company in 2017, they purchased at option grant prices – of approximately $25 per share – that were set *more than a year before* the SoftBank investment.  Plaintiffs also fail to allege any facts indicating that Neumann's statements were false or misleading when made, much less that they were made in the context of an offer to sell or with the intent to fraudulently induce the purchase of WeWork stock.  Given these facts, it is not surprising that Plaintiffs are unable to plead any element of their securities fraud claims under the Corporations Code.

1    *First*, Plaintiffs fail to plead a causal relationship between their alleged injury and

2    Neumann's statements sufficient to state a claim under Sections 25400(d) and 25500 of the

3    Corporations Code or to confer standing under Article III.  Plaintiffs cannot allege that they

4    purchased shares at prices that were inflated by Neumann's alleged misstatements in January 2019

5    because Plaintiffs paid prices that were set a year before those statements were made.  Nor can

6    Plaintiffs allege that Neumann's statements caused WeWork's $47 billion valuation, as that

7    valuation was based on an investment by SoftBank that was announced prior to those statements.

8    *Second*, Plaintiffs rely on just four alleged misstatements by Neumann – made primarily in

9    a January 2019 CNBC interview with actor Ashton Kutcher – and do not allege particularized

10   facts indicating that those statements were false or misleading when they were made.  For

11   example, Plaintiffs allege no facts contradicting Neumann's alleged statement that WeWork was

12   "growing faster than ever" and had more than $6 billion on its balance sheet.  That WeWork later

13   found itself in a significantly worsened financial position after it was unable to complete an IPO

14   does not render those earlier statements fraudulent or actionable under the Corporations Code.

15   *Third*, Count I should be dismissed for the additional reason that Plaintiffs fail to allege

16   particularized facts showing that Neumann acted with the heightened level of scienter required by

17   Sections 25400(d) and 25500 of the Corporations Code, *i.e.*, that Neumann willfully and

18   knowingly made false or misleading statements with the specific intent to affect WeWork's stock

19   price in order to induce its purchase.  Plaintiffs' irrelevant allegations about Neumann's earlier

20   stock sales and his management style do not come close to establishing scienter.

21   *Fourth*, Count II, which asserts a violation of Sections 25401 and 25501 of the

22   Corporations Code, also should be dismissed because Plaintiffs do not allege any facts suggesting

23   that Neumann's statements were part of an "offer" to sell securities.  Neumann's statements did

24   not so much as mention WeWork stock, let alone invite listeners to purchase it.  This is a far cry

25   from the kinds of explicit offers in securities registration documents, roadshows or sales

26   presentations that could form the basis of a cognizable claim.

27   The Court should dismiss the CAC in its entirety.

28

Conrad & Metlitzky
LLP

# BACKGROUND[1]

## I.  THE PARTIES.

WeWork provides office space solutions and amenities to its members, which range from small startups to large enterprise clients.  (CAC ¶¶ 2-4.)  WeWork is and has always been a private company.  (CAC ¶ 2.)  Plaintiffs do not allege that WeWork's equity was ever traded on an exchange or that its share price was determined by market trading activity.

Adam Neumann founded WeWork and served as its CEO from 2010 until September 2019.[2]  (CAC ¶¶ 2, 94.)  SoftBank Group Corp. ("SoftBank") has been an investor in WeWork since in or about 2017, and it now controls the majority of the Company's equity.  (CAC ¶¶ 18, 96.)

Plaintiffs Malakyar Vernet and Henriette Kockum are former WeWork employees who received, as part of their employment compensation, options to purchase WeWork Class A common shares, which they exercised in 2019.  (CAC ¶¶ 14-15; Ex. 1; Ex. 2.)[3]

## II.  WEWORK'S HIGH-GROWTH BUSINESS MODEL.

WeWork was founded as a co-working company meant to foster relationships between professionals by providing access to shared office space and related amenities and services.  As is

---

[1]  The factual allegations in the CAC are taken as true solely for purposes of this motion.

[2]  Although the CAC indicates that Neumann stepped down in or about October 2019 (CAC ¶ 94), he did so on September 24, 2019.

[3]  Citations to "Ex. __" refer to the exhibits attached to the accompanying Declaration of Morgan A. Davis.  This Court may consider Exhibits 1-2 and 5-7 because they "form[] the basis of [Plaintiffs'] claim[s]," and, therefore, are incorporated by reference in the CAC.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citation and internal quotation marks omitted).  As set forth below, Plaintiffs' core allegation is that they purchased shares of WeWork stock at prices that were inflated by Defendants' statements.  (CAC ¶¶ 14-15, 110, 116.)  These documents reflect Plaintiffs' purchase of the shares at issue, the prices that they paid per share, and the date those prices were set.  Plaintiffs' claims "necessarily depend[]" on establishing these facts.  *Khoja*, 899 F.3d at1002 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).  Plaintiffs may not avoid dismissal on "a Rule 12(b)(6) motion by deliberately omitting references to [these] documents upon which their claims are based."  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *as amended* (July 28, 1998) (holding employee health plans were incorporated by reference where claims were premised on coverage under the plan), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006).

1  common among venture-backed startups, WeWork's business model relied on high growth and

2  rapid expansion.  (CAC ¶ 79.)  Buoyed by early successes and strong demand, the Company grew

3  quickly.  Between 2012 and 2019, it expanded from four locations to several hundred in cities

4  around the globe.  (CAC ¶¶ 26-27.)

5  As WeWork expanded, its revenues grew.  (CAC ¶ 91.)  WeWork reinvested its revenues

6  and additional funds it raised into further growth and expansion and, as a result, its net income was

7  negative every year after 2012.  (CAC ¶¶ 30, 79.)  That WeWork was reinvesting money it made

8  to facilitate growth was not unusual, especially among successful startups.  Both Netflix and

9  Facebook, for example, continued to lose money even after they went public.  (CAC ¶ 79.)  Nor

10  were WeWork's financial metrics hidden.  The Company's growing losses were widely reported

11  in the press.  (*See*, *e.g.*, CAC ¶ 79 ("CNBC REPORTER: But right now [WeWork is] losing

12  money."); Ex. 3 ("WeWork continues to spend far more than it makes.  It reported a loss of

13  $723 million for the first half of [2018] as it built new co-working spaces across the globe.").)[4]

14  Neumann allegedly discussed WeWork's high-growth business model with employees at

15  an all-hands meeting in or around June 2016, explaining that WeWork would eventually move out

16  of its high-growth stage and start generating positive cash flow.  (CAC ¶ 30.)  According to the

17  CAC, Neumann stated:

18  > We're in an amazing place.  We have a profitable business that's going to only get
19  > better, that's going to help us fulfill our calling and our mission.  By shifting this
20  > culture, we're going to be able to not only keep doing these things, but do them 10
21  > times better, move very strongly into positive cash flow; no need to rely on
   > raising money, no need to rely on going public, no need to rely on anything
   > except for ourselves and fulfill our mission for our members.

22

---

23  [4] This Court may consider Exhibits 3 and 4 because Plaintiffs cite those documents in the CAC to
24  support their claims and provide web addresses where those documents can be found online.
   (CAC ¶ 61.)  Accordingly, those documents are incorporated by reference in the CAC.  *See
25  Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (holding document was
   incorporated by reference where the plaintiffs "quoted [the document] in their Complaint and
26  provided the web address where the [document] could be found online"); *accord Philco Invs., Ltd.
   v. Martin*, No. 10-cv-02785, 2011 WL 4595247, at *7 n.9 (N.D. Cal. Oct. 4, 2011) (explaining that
27  "[i]f a complaint cites to a document not actually attached as an exhibit, the court may still treat
   that document as part of the pleading for purposes of evaluating a motion to dismiss") (citations
28  omitted).

(CAC ¶ 30.)  Plaintiffs do not allege that this statement impacted WeWork's valuation or stock price.  Nor could it have, as the statement predated by nearly a year the first investment in WeWork by SoftBank, whose significant equity investments established the $20 billion and $47 billion enterprise valuations alleged in the CAC.  Moreover, this statement predated Plaintiffs' employment, and Plaintiffs do not allege that they were present when Neumann allegedly made the statement or that they were even aware of it.

## III.   WEWORK'S RELATIONSHIP WITH SOFTBANK AND ITS IMPACT ON THE COMPANY'S VALUATION.

WeWork's early success attracted many institutional investors such as Benchmark Capital. (CAC ¶ 19.)  In 2017, WeWork received its first investment from what would become its largest investor, SoftBank.  That year, SoftBank and its venture capital arm, the SoftBank Vision Fund, began making significant cash injections into WeWork.  (CAC ¶ 18.)  Between 2017 and January 2019, SoftBank made commitments to invest over $10 billion in WeWork.  (Ex. 4.)  During this period, WeWork's $20 billion and $47 billion enterprise valuations were implied based on the price that SoftBank agreed to pay for its equity investments in the Company.  (CAC ¶¶ 18, 31, 64.)

In 2017, SoftBank and its Vision Fund made an investment in WeWork that implied a valuation for the Company of $20 billion.  (CAC ¶¶ 34, 63-64.)  In late 2018 and early 2019, after extensive due diligence, SoftBank made another series of investments in WeWork totaling $6 billion.  (CAC ¶¶ 54-56, 61.)  These included an immediate cash injection of $1 billion, a tender offer, and two warrant agreements.  (Ex. 3, Ex. 4.)  The second of these warrant agreements, which was executed in January 2019, provided that by April 2020, SoftBank would purchase $1.5 billion in additional stock in the Company at a price of $110 per share (the "January 2019 Warrant").  (Verified Compl., *The We Co. v. Softbank Grp. Corp., et al.*, No. 2020-0258, 2020 WL 1820688, ¶ 32 (Del. Ch. Apr. 7, 2020) (cited in CAC ¶¶ 10, 37, 38, 52, 54, 56, 62, 64, 68, 80, 93) (hereinafter "SoftBank Complaint"); Ex. 3.)  *The New York Times* reported on the key terms of this investment, including that the January 2019 Warrant would not be funded until 2020.  (Ex. 3.)

On January 8, 2019, media outlets reported that, as a result SoftBank's $6 billion investment, WeWork's implied valuation was $47 billion, or $110 per share.  (CAC ¶¶ 61, 93.)

## IV.   WEWORK'S JANUARY 2019 GLOBAL SUMMIT.

On or about January 7-10, 2019, WeWork held its Global Summit and Creator Awards (the "Summit") in Los Angeles, mere days after the announcement of WeWork's new post-money valuation of $47 billion.  (CAC ¶¶ 6 n.2, 65-78.)  The Summit was attended by over 10,000 employees and others.  (CAC ¶ 76.)  During the Summit, Neumann sat alongside Ashton Kutcher for an interview with CNBC, during which the CNBC reporter asked Neumann about SoftBank's latest investment.  Neumann stated that WeWork had "north of $6 billion" on its balance sheet, which he predicted was "above and beyond" what would be needed to "fund the company for the next four to five years."  (CAC ¶ 65.)  Although Plaintiffs allege that this statement was false or misleading, they allege no facts showing that, as of January 2019, the Company did not, in fact, have more than $6 billion on its balance sheet or enough money to fund the Company's operations for the next four to five years.  (CAC ¶ 66.)  Nor do Plaintiffs allege facts showing that this statement impacted WeWork's valuation or stock price.

In that same interview with CNBC, Neumann also discussed WeWork's growth, stating that:  WeWork had "never grown faster"; it ended 2018 with a "run-rate revenue [of] 2.5 billion plus"; its "enterprise business is growing faster than ever before"; and in the prior three months, when "there was not a downturn, but the beginning of a pull-back, [WeWork] ha[d] never grown faster."  (CAC ¶ 72.)  He further stated that it would cost a public-company CFO 50% less to procure office space from WeWork.  (CAC ¶ 72.)  Again, Plaintiffs allege no facts showing that those statements were false or misleading or impacted WeWork's valuation or stock price.

That same day, Neumann also allegedly made "presentations" to WeWork employees, during which he "emphasized" certain aspects of WeWork's business and stated that:  WeWork had completed a round of funding that valued the company at $47 billion; the Company was growing and lowering expenses due to proprietary data analytics; and it had enough capital to last years, which gave the Company a "safety net" going forward.  (CAC ¶¶ 76-77.)  Plaintiffs allege no facts showing that this statement was false or misleading when made or impacted WeWork's valuation or stock price.

1   **V.      PLAINTIFFS' EMPLOYMENT AND EMPLOYEE STOCK OPTIONS.**

2         Shortly after joining WeWork, Plaintiffs received, as a benefit of their employment, stock

3   option grants, which set the strike price that they would pay to exercise their options.  Specifically,

4   on January 12, 2018, WeWork granted Mr. Vernet the option to purchase a set number of shares at

5   $26.45.  (Ex. 5.)  On January 12, 2018 and June 12, 2018, WeWork granted Ms. Kockum the

6   option to purchase shares at $26.45 and $26.75, respectively.  (Ex. 6, Ex. 7.)  In other words,

7   irrespective of what happened to WeWork's enterprise valuation after those options were granted

8   – whether it increased or decreased – Plaintiffs would always pay the pre-set strike price for each

9   share purchased.

10        Ms. Kockum exercised her options on January 26, 2019.  (CAC ¶ 15; Ex. 2.)  Mr. Vernet

11  exercised his options on April 30, 2019.  (CAC ¶ 14; Ex. 1.)  These exercises occurred after

12  WeWork's $47 billion valuation – equivalent to $110 per share – was announced, but Plaintiffs

13  did not pay anything close to $110 per share.  Instead, they exercised their options at the pre-set

14  price dictated by their options grant agreements.

15  **VI.     WEWORK'S CANCELLED IPO.**

16        In 2019, after Plaintiffs exercised their options, WeWork sought to raise additional equity

17  capital through an IPO.  On August 14, 2019, WeWork publicly filed a prospectus on Form S-1

18  with the Securities and Exchange Commission.  (CAC ¶ 88.)  Following the prospectus's release,

19  financial media and investment analysts criticized WeWork's business model, finances, and

20  corporate governance.  (CAC ¶ 88.)  Facing mounting criticism from potential investors, on

21  September 30, 2019, WeWork withdrew its prospectus, thereby ending the IPO process.

22  (CAC ¶ 8.)  The cancellation of WeWork's IPO was widely reported, and Neumann stepped down

23  as the CEO of the Company.  (CAC ¶ 94.)  Even after the failed IPO and Neumann's resignation,

24  SoftBank redoubled its investment in WeWork:  It agreed to take a majority stake in the Company,

25  including by offering to purchase an additional $3 billion of the Company's preferred and

26  common stock through a tender offer and providing $3.3 billion of debt financing.  (CAC ¶ 96;

27  SoftBank Complaint ¶ 43.)

28

Conrad & Metlitzky
LLP

## VII.   PLAINTIFFS' CLAIMS.

Against this backdrop, Plaintiffs assert claims of securities fraud under the California Corporations Code.  (CAC ¶¶ 106-120.)  Despite its length, the CAC identifies just four statements that Plaintiffs allege were false or misleading.  At a meeting in 2016, Neumann allegedly told employees who were concerned about layoffs at WeWork's peers:  "We have a profitable business that's going to only get better, that's going to help us fulfill our calling and our mission."  (CAC ¶ 30.)  Three years later, at the Summit in January 2019, Neumann allegedly made the following statements:

- In an interview with Ashton Kutcher and CNBC, Neumann allegedly stated that WeWork had "north of $6 billion" on its balance sheet, which was "above and beyond" what was needed to "fund the company for the next four to five years."  (CAC ¶ 65.)

- In that same interview, Neumann also stated that:  WeWork had "never grown faster"; it had a "run-rate revenue" of $2.5 billion plus for 2018; its "enterprise business is growing faster than ever before"; in the prior three months, when "there was not a downturn, but the beginning of a pull-back, [WeWork] ha[d] never grown faster"; and it would cost a public-company CFO 50% less to procure office space from WeWork.  (CAC ¶ 72.)

- That same day, Neumann also allegedly made "presentations" to employees, during which he "emphasized" certain aspects of WeWork's business and stated that:  WeWork had completed a round of funding that valued the company at $47 billion; the Company was growing and lowering expenses due to proprietary data analytics; and it had enough capital to last years, which gave the Company a "safety net" going forward.  (CAC ¶¶ 76-77.)

Plaintiffs allege that WeWork's valuation was artificially inflated as a result of these statements (without explaining how Neumann's statements could have impacted a valuation determined by SoftBank's investments).  (CAC ¶¶ 31, 61.)  Plaintiffs claim that WeWork's "true value" came to light in August 2019 when the Company issued its prospectus.  (CAC ¶ 88.)

## ARGUMENT

## I.   LEGAL STANDARD.

Because Plaintiffs assert fraud claims, they must satisfy the "exacting pleading standards of Federal Rule of Civil Procedure 9(b)" by "stat[ing] with particularity the circumstances constituting fraud."  *Or. Pub. Empl. Ret. Fund v. Apollo Grp., Inc.*, 774 F.3d 598, 604 (9th Cir. 2014) (quoting Fed. R. Civ. P. 9(b)).  In addition, as Plaintiffs' claims under the California Corporations Code are patterned on the federal securities statues, federal cases construing federal

1   securities laws are persuasive authority.  *Irving Firemen's Relief Ret. Fund v. Uber Techs.*, 398 F.

2   Supp. 3d 549, 554 n.2 (N.D. Cal. 2019); *Viterbi v. Wasserman*, 191 Cal. App. 4th 927, 937 (2011).

3   The Court is not required to "accept as true . . . allegations that are merely conclusory,

4   unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*,

5   266 F.3d 979, 988 (9th Cir. 2001).

6   **II.      THE CAC SHOULD BE DISMISSED FOR FAILURE TO PLEAD CAUSATION.**

7           The CAC should be dismissed because Plaintiffs allege no facts indicating that they

8   purchased WeWork stock at prices that were inflated by Neumann's alleged misstatements.

9   Plaintiffs therefore fail to plead causation as required by both Article III and Section 25500.

10  Article III requires Plaintiffs to clearly allege facts demonstrating that they suffered an "injury in

11  fact" that is "fairly traceable to the challenged conduct of the defendant."  *Spokeo, Inc. v. Robins*,

12  136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992));

13  *see also Novak v. United States*, 795 F.3d 1012, 1018-19 (9th Cir. 2015) (Article III requires a

14  "causal connection between the injury and the conduct complained of.") (citing *Lujan*, 504 U.S. at

15  560).  Section 25500 expressly provides for liability in connection with the purchase of securities

16  "at a price which was affected by" a willful violation of Section 25400.  Cal. Corp. Code § 25500

17  (2019); *see also Bowden v. Robinson*, 67 Cal. App. 3d 705, 714 (1977) (Section 25500 "requires

18  the violator's acts to cause the resultant damages.").

19          Plaintiffs do not plausibly allege that they purchased WeWork stock at prices that were

20  inflated by Neumann's alleged misstatements.  On this point, the CAC is remarkably misleading.

21  Plaintiffs allege that Neumann made false or misleading statements in January 2019 and that

22  Plaintiffs subsequently purchased WeWork stock "at inflated prices," but they fail to mention that

23  their purchase prices were fixed by their option grant agreements *a year earlier*.  (CAC ¶¶ 14, 15;

24  Ex. 5 (Vernet options agreement, dated January 12, 2018, setting grant price at $26.45 per share);

25  Ex. 6 (Kockum options agreement, dated January 12, 2018, setting grant price at $26.45 per

26  share); Ex. 7 (Kockum options agreement, dated June 12, 2018, setting grant price at $26.75 per

27  share).)  It is impossible, therefore, that Neumann's January 2019 statements could have affected

28  or inflated the price that Plaintiffs paid for their stock.

1    Nor do Plaintiffs plausibly allege that the prices they paid were inflated by Neumann's

2    June 2016 statement to employees: "We have a profitable business that's going to only get better,

3    that's going to help us fulfill our calling and our mission." (CAC ¶ 30.) Plaintiffs allege no facts

4    indicating how Plaintiffs' grant prices were determined in 2018, much less how those prices could

5    have been impacted by a statement made more than two years earlier. To the extent that Plaintiffs'

6    grant prices related in some way to WeWork's implied enterprise valuation at the time of $20

7    billion, the CAC makes clear that this valuation was determined by SoftBank's investments in the

8    Company (CAC ¶¶ 18, 31, 34), and there is no allegation that Neumann's June 2016 statement

9    impacted SoftBank's investments. To the contrary, the CAC details the rigorous and thorough due

10   diligence that SoftBank conducts prior to making an investment. (CAC ¶¶ 54-56) It would defy

11   credulity to suggest that SoftBank would have relied on Neumann's vague statement of corporate

12   optimism when deciding whether to invest billions of dollars in WeWork – if it were even aware

13   of that statement.

14   **III.    THE CAC SHOULD BE DISMISSED FOR FAILURE TO PLEAD AN
              ACTIONABLE MISSTATEMENT.**

15         The Court should also dismiss the CAC in its entirety for the independent reason that

16   Plaintiffs fail to plead an actionable misstatement. Plaintiffs cite four statements by Neumann but

17   do not allege any facts indicating that those statements were false or misleading at the time they

18   were made. Plaintiffs therefore fail to meet their burden under Rule 9(b), which requires them to

19   "state with particularity the circumstances constituting fraud or mistake" and "identify[] the

20   statements at issue and set[] forth what is false or misleading about the statement and why the

21   statements were false or misleading at the time they were made." *Irving Firemen's Relief & Ret.*

22   *Fund v. Uber Techs.*, No. 17-cv-05558, 2018 WL 4181954, at *4 (N.D. Cal. Aug. 31, 2018)

23   (quoting *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012)).[5]

24

25   ---

26   [5] Plaintiffs also include at least one alleged misstatement that falls outside the asserted class
     period of June 3, 2016 to September 30, 2019. (CAC ¶¶ 1, 29.) This statement is inactionable as a
     matter of law and should be disregarded by this Court. *See Hodges v. Akeena Solar, Inc.*, No. 09-
27   cv-02147, 2010 WL 3705345, at *2 (N.D. Cal. May 20, 2010) (citations omitted) ("A securities
     class action defendant is liable only for those statements made during the class period, not
28   statement[s] made before or after the class period.").

**A.     The June 2016 Statements Are Inactionable Puffery and Were Not False or Misleading When Made.**

Neumann's 2016 statement to employees – "We have a profitable business that's only going to get better, that's going to help us fulfill our calling and our mission" – is not actionable under the securities laws.  (CAC ¶ 30.)  This type of optimistic statement about WeWork's business model and mission is precisely the kind of vague and "subjective assessment" that is not misleading as a matter of law.  *Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*, 774 F.3d 598, 606 (9th Cir. 2014) (citation omitted); *accord Weinstein v. Appelbaum*, 193 F. Supp. 2d 774, 779 (S.D.N.Y. 2002) (citations omitted) (holding statement that company was "still profitable" was "mere puffery").  Such "vague statements of optimism" and "feel good monikers" amount to "mere corporate puffery" and are not actionable.  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (citation omitted).  Moreover, Plaintiffs acknowledge that WeWork recorded a profit in 2012, that it thereafter had increasing revenues year over year, and that Neumann told employees in the same breath that WeWork's goal was eventually to "move very strongly into positive cash flow."  (CAC ¶¶ 30, 91.)  That WeWork chose to use its revenue to expand the Company, rather than record a profit, does not mean that it was not a "profitable business."

Moreover, as discussed above, Plaintiffs do not have Article III standing to challenge this statement because they do not – and cannot – allege an injury that is "fairly traceable" to this alleged misstatement.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Plaintiffs were not WeWork employees in 2016 when this statement was made, and there is no allegation that they were even aware of it.  Furthermore, Plaintiffs do not allege any facts showing that this statement impacted WeWork's valuation, much less the price at which Plaintiffs purchased stock years later, which was fixed in 2018 by their grant agreements.  Because Plaintiffs' alleged harm is not traceable to this alleged misstatement, it cannot serve as the basis of their claims.

**B.     Plaintiffs Do Not Adequately Allege that the January 2019 Statements Were False or Misleading When Made.**

Plaintiffs also fail to state a claim based on Neumann's statements during the Summit

1   because, as discussed below, they do not allege particularized facts showing that those statements

2   were false or misleading when made.  Instead, they rely on events that occurred months later –

3   after the cancellation of WeWork's IPO – in a clear case of pleading "fraud by hindsight."  *Park v.*

4   *GoPro, Inc.*, No. 18-cv-00193, 2019 WL 1231175, at *9 (N.D. Cal. Mar. 15, 2019) (citation

5   omitted).  Plaintiffs also rely on allegations that are contradicted by the documents Plaintiffs

6   themselves cite or that simply "bear no connection" to the substance of the alleged misstatements.

7   *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 807 (N.D. Cal. 2019).

8                    **1.      January 2019 Statements About WeWork's Balance Sheet.**

9         Plaintiffs do not allege facts contradicting Neumann's statement during his CNBC

10   interview that WeWork's "balance sheet has north of [$]6 billion on it," or his prediction that

11   WeWork had "above and beyond what we need to fund the company for the next four to five

12   years."  (CAC ¶ 65; *see also* CAC ¶ 77.)

13         *First*, Plaintiffs' implication that Neumann misled the public by predicting that WeWork

14   had "above and beyond" what it needed to fund operations without also disclosing that the January

15   2019 Warrant was "unfunded" or "moneyless" is nonsensical because there is no such thing as a

16   "funded warrant" or an "unfunded warrant."  (CAC ¶¶ 6, 60, 62 n.44, 64, 68, 82, 92.)  By

17   definition, a warrant is a contract to purchase shares in the future, not an immediate source of

18   capital.  *See*, *e.g.*, 3 Alan S. Gutterman, *Cal. Transactions Forms--Bus. Entities* § 11:133 (2020).

19   Moreover, as Plaintiffs acknowledge, the "deal's key terms" were reported by the media.  (CAC

20   ¶¶ 61 & n. 42 (citing Ex. 3, a January 7, 2019 article reporting that "as much as $1.5 billion" of

21   SoftBank's investment "will be held back until 2020")).

22         *Second*, Plaintiffs' allegations that WeWork's cash position suffered significantly in late

23   2019 following the cancelled IPO does not imply that Neumann's more optimistic projections in

24   January of that year were false when made.  *See*, *e.g.*, *Yourish v. Cal. Amplifier*, 191 F.3d 983, 997

25   (9th Cir. 1999) (citation omitted)  ("[I]t is clearly insufficient for plaintiffs to say that [a] later,

26   sobering revelation[] makes[s] [an] earlier, cheerier statement a falsehood.").  Nor does the alleged

27   statement by WeWork's new Executive Chairman, Marcelo Claure, to employees in October 2019

28   that WeWork had become "a story that in two weeks we're going to run out of cash" mean that

1   WeWork had insufficient capital at the time of Neumann's CNBC interview more than 10 months

2   earlier.  (CAC ¶ 67.)  Plaintiffs also repeatedly cite a September 18, 2019 article by Nori Lietz

3   analyzing WeWork's prospectus, which has no bearing on Neumann's statements made over 8

4   months before the prospectus was released.  (CAC ¶ 71.)  Moreover, Lietz did not purport to

5   estimate WeWork's future cash requirements and therefore does not contradict Neumann's

6   projection that WeWork would have enough capital to last four or five years.  (CAC ¶ 71.)

7        *Third*, that WeWork could have received or sought additional investments also does not

8   imply that, as of January 2019, WeWork did not have capital sufficient to "fund the company for

9   the next four to five years."  (CAC ¶¶ 65, 68-69.)  Plaintiffs assert that SoftBank's $6 billion

10   investment in WeWork left the company "in a precarious financial condition" because it was less

11   than the "$15-to-$20 billion funding deal" that Neumann and SoftBank allegedly contemplated in

12   late 2018, but they allege no facts to support that assertion.  (CAC ¶¶ 66, 68.)  Furthermore,

13   Plaintiffs ignore that the bulk of that amount would have gone to buy out existing investors, not to

14   the Company (CAC ¶ 65), as the cited allegation from WeWork's complaint against SoftBank

15   makes clear.  (CAC ¶ 68; SoftBank Compl. ¶ 31 (alleging that planned transaction "would have

16   delivered $54 a share to WeWork's minority stockholders").)  Similarly, Plaintiffs' allegation that

17   Neumann sought more capital from investors does not suggest that WeWork had insufficient

18   capital to continue operations.  (CAC ¶ 69.)  Indeed, such an inference is inconsistent with

19   Plaintiffs' repeated allegations that a desire to pursue further growth and expansion, as opposed to

20   existing financial needs, fueled Neumann's motivation to raise capital.  (CAC ¶¶ 28, 37, 39.)  This

21   Court "need not accept [such] internally inconsistent facts as true."  *Valley Surgical Center LLC v.*

22   *Cty. of Los Angeles*, No. 13-cv-02265, 2015 WL 3825310, at *6 (C.D. Cal. June 18, 2015).

23                  **2.**       **January 2019 Statements About WeWork's Growth.**

24        Plaintiffs do not adequately plead that Neumann's alleged misstatements in January 2019

25   regarding WeWork's growth were false or misleading when made because the reasons that

26   Plaintiffs offer "bear no connection to the substance of [Neumann's] statements."  *Veal*, 423 F.

27   Supp. 3d at 807.  Such allegations do not meet Plaintiffs' burden of pleading "'specific facts

28   indicating why' the statements at issue were false."  *Id.* at 805 (quoting *Metzler Inv. GMBH v.*

*Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008)).

*First*, Plaintiffs contend that Neumann gave a misleading impression of "how WeWork's business model would fare in a downturn" – but Neumann did not discuss how WeWork's business model would fare in an economic downturn.  (CAC ¶ 72.)  Rather, he told CNBC that WeWork had "never grown faster" than "in the past three months, [in] which ***there was not a downturn***, but the beginning of a pull-back."  (CAC ¶ 72 (emphasis added).)

*Second*, although Plaintiffs assert that Neumann made a false or misleading statement about WeWork's revenue run-rates, they do not dispute the accuracy of Neumann's assertion that, "as of today," WeWork finished 2018 "at a run rate of [$]2.5 billion . . . plus" in revenue.  (CAC ¶ 72.)  Plaintiffs point to Lietz's assertion that "in the long term, [WeWork's] revenue sharing agreements will have an impact on top line revenues," but Neumann made no predictions about WeWork's revenues in the long term.  (CAC ¶¶ 72-73.)

*Third*, Plaintiffs assert that Neumann misrepresented the "cost savings" that WeWork enjoyed through revenue-sharing agreements with its landlords, but the cited statement makes no reference to WeWork's cost savings or to its revenue-sharing agreements.  (CAC ¶¶ 72-75.)  Rather, it addresses the value proposition that WeWork presented to its enterprise customers, explaining that public companies would pay "50% less" by obtaining office space through WeWork.  (CAC ¶ 72.)  Plaintiffs do not dispute the truth of this assertion.

### 3.    January 2019 Alleged Presentations to Employees.

Plaintiffs' allegations concerning Neumann's alleged presentations to WeWork employees fail for lack of particularity and falsity.  Plaintiffs' generalized allegation that Neumann "emphasized" WeWork's "fast revenue growth and profitable business model" (CAC ¶ 77) does not even identify the allege misstatement and therefore does not meet Plaintiffs' burden under Rule 9(b).  Plaintiffs also allege that Neumann stated that "the Company was growing and lowering expenses due to the proprietary data analytics" (CAC ¶ 77), but they do not plead facts contradicting that statement.  Finally, Plaintiffs' remaining allegations – that Neumann said that WeWork had been valued at $47 billion and had enough money to "last years" – fail to allege an actionable misstatement for the reasons set forth above.  (CAC ¶ 77.)

1    Plaintiffs' vague and unsubstantiated allegation that some unidentified "leasing metrics"

2  were "fabricat[ed]" (CAC ¶ 78) also does not contradict any of Neumann's alleged statements.

3  Plaintiffs fail to allege any basis for their conclusory assertions that metrics were "fabricate[d],"

4  much less any facts indicating what leases were affected by this purported "fabrication" or how it

5  impacted WeWork's reported revenue, growth, or valuation.  (CAC ¶¶ 45-47.)  *See Vess v. Ciba-*

6  *Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted) ("Averments of fraud

7  must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.'").

8    **C.    Plaintiffs' Causes of Action Do Not Cover "Manipulative Transactions."**

9    Perhaps recognizing their failure to identify an actionable misstatement, Plaintiffs try to

10  salvage their claims based on unsupported assertions that the January 2019 Warrant was a

11  "manipulative transaction" or "device."  (CAC ¶¶ 6, 16, 63, 107.)  But Plaintiffs brought their case

12  under Sections 25400(d) and 25401 of the Corporations Code, not federal Rule 10b-5, and

13  allegedly manipulative transactions or devices are not actionable.  *See* 17 C.F.R. § 240.10b-5(a)

14  (2019).  Rather, those statutes apply only to false or misleading statements.  *See* Cal. Corp. Code

15  §§ 25400(d), 25401.[6]  Indeed, a prior version of Section 25401 made it unlawful to "employ a

16  device, scheme, or artifice to defraud," but the statute was amended in 2015 to remove that

17  provision.  *See* 2015 Cal. Stat., ch. 190 (A.B. 1517).[7]

18

19  _____

20  [6]  Section 25401 states:  "It is unlawful for any person to offer or sell a security in this state, or to
21  buy or offer to buy a security in this state, by means of any written or oral communication that
   includes an untrue statement of a material fact or omits to state a material fact necessary to make
22  the statements made, in the light of the circumstances under which the statements were made, not
   misleading."

23   Section 25400(d) states:  "It is unlawful for any person . . . .to make, for the purpose of inducing
   the purchase or sale of such security by others, any statement which was . . . false or misleading
24  with respect to any material fact, or which omitted to state any material fact necessary in order to
   make the statements made . . . not misleading . . . ."
25
   [7]  Plaintiffs' contention that the January 2019 Warrant was a device to inflate WeWork's valuation
26  is nonsensical.  The January 2019 Warrant was only one piece of a $6 billion investment by
   SoftBank that included a direct cash injection of $1 billion.  *See supra* pp. 4-5.  Softbank
27  continued to invest billions of dollars in WeWork even after the IPO was cancelled.  *See supra* pp.
   7.  Plaintiffs offer no explanation as to why SoftBank would continue to invest such substantial
28  sums in the Company after the alleged inflationary scheme failed.

Conrad & Metlitzky
LLP

IV.   **COUNT I SHOULD BE DISMISSED FOR LACK OF SCIENTER.**

Count I should also be dismissed because Plaintiffs fall far short of satisfying their burden of pleading that Neumann acted with the requisite scienter under Sections 25400(d) and 25500, which requires Plaintiffs to plead that Neumann (*i*) knowingly made a false or misleading statement with (*ii*) a "specific intent to affect the price of a security in order to induce [its] purchase or sale." *Cal. Amplifier v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 109-10 (2001); *accord Goodworth Holdings, Inc. v. Suh*, 239 F. Supp. 2d 947, 962 (N.D. Cal. 2002), *aff'd*, 99 F. App'x 806 (9th Cir. 2004); Cal. Corp. Code § 25500 (liability requires "willful[]" violation of Section 25400).  California courts have recognized that this establishes a "high level of scienter." *Cal. Amplifier*, 94 Cal. App. 4th at 112.  With regard to the first scienter element, for the reasons discussed above, Plaintiffs fail to plead that Neumann's statements were false or misleading, much less that he made those statements with knowledge of their falsity.  (CAC ¶¶ 66-69, 71, 78.)  As to the second element, Plaintiffs allege no facts even suggesting that Neumann acted with specific intent to affect WeWork's stock price in order to induce investors to purchase WeWork's stock.

Unable to plead either element of scienter, Plaintiffs resort to irrelevant and inflammatory allegations concerning Neumann's stock sales, purported self-dealing and "corporate governance failures."  *First*, Plaintiffs assert that Neumann's sale of $361 million in stock in 2017 supports a finding of scienter because "stock sales support scienter."  (CAC ¶ 81.)  Plaintiffs ignore that the sale of stock, by itself, does not raise an inference of scienter; instead, a stock sale by a corporate insider is "suspicious" only when it is "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information."  *Curry v. Yelp Inc.*, 875 F.3d 1219, 1226 (9th Cir. 2017) (citation and quotation marks omitted); *accord Bains v. Moores*, 172 Cal. App. 4th 445, 457 (Cal. App. Ct. 2009).  Plaintiffs fail to meet this standard because they do not provide any "evidence of [Neumann's] prior trading history" that would allow this Court to evaluate whether this alleged sale was "dramatically out of line with prior trading practices."  *See Curry*, 875 F.3d at 1226-27 ("Without such allegations, the district court correctly determined that Plaintiffs' complaint failed to plead that . . . Defendants' sales of stock [supported an inference of scienter].").  Moreover, while an inference of scienter may arise

1    when an insider "sell[s] large percentages of his holdings" while "simultaneously" making "rosy

2    characterizations of company performance," *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036-

3    37 (9th Cir. 2002) (citation omitted), the only alleged stock sale occurred two years before the

4    alleged January 2019 misstatements, which defeats an inference of scienter.

5        *Second*, Plaintiffs make the conclusory statement that a $500 million line of credit secured

6    by Neumann in exchange for WeWork stock is "substantially similar to a stock sale" and therefore

7    proves scienter.  (CAC ¶ 81.)  Plaintiffs do not explain why this Court should treat this loan as the

8    legal equivalent of a stock sale, particularly given that the former transaction would have required

9    a lender to independently assess the value of stock securing the line of credit.  In any event, this

10   allegation concerning one loan cannot support scienter in the absence of allegations concerning

11   Neumann's borrowing history.  *See Curry*, 875 F.3d at 1226.

12       *Third*, Plaintiffs allege that Neumann engaged in "self-dealing" transactions that "show[] a

13   lack of meaningful oversight by the Board and a lack of accountability by Neumann," but they

14   make no attempt to explain how these show that Neumann made the four alleged misstatements

15   with knowledge of their falsity and specific intent to affect WeWork's stock price to induce its

16   purchase.  (CAC ¶ 86.)

17   **V.    COUNT II SHOULD BE DISMISSED BECAUSE NEUMANN'S STATEMENTS**

18   **WERE NOT PART OF AN "OFFER" TO SELL SECURITIES AND HE WAS NOT**

19   **A SELLER OF SECURITIES.**

20       **A.    Plaintiffs Do Not Allege That Neumann Made an "Offer" to Sell Securities.**

21       Count II should be dismissed because Plaintiffs do not plead that Neumann's alleged

22   misstatements were part of a statutorily defined "offer" to sell WeWork stock.  *See* Cal. Corp.

23   Code § 25401 (making it unlawful "to offer or sell a security in this state, . . . by means of [a] . . .

24   communication that includes" a materially misleading statement); *Id.* § 25008(a) (explaining that

25   "an offer or sale of a security is made in this state when an offer to sell is made in this state"); *Rich*

26   *v. Shrader*, No. 09-cv-0652, 2010 WL 3717373, at *23 (S.D. Cal. Sept. 17, 2010) (dismissing

27   Section 25401 claim where the email containing the alleged misrepresentation was "not itself an

28   offer").

1    Plaintiffs do not allege, because they cannot, that Neumann's alleged misstatements were

2 part of a shareholder prospectus, registration statement, roadshow, or other communication in

3 which WeWork "attempt[ed] or offer[ed] to dispose of" a security, as is required to meet the

4 statutory definition of an "offer to sell."  Cal. Corp. Code § 25017(b); *accord Zakinov v. Ripple*

5 *Labs, Inc.*, No. 18-cv-06753, 2020 WL 922815, at *16 (N.D. Cal. Feb. 26, 2020) (citation omitted)

6 (explaining that an "offer" within the meaning of the Corporations Code must "invite[] the

7 performance of a specific act without further communication and leave nothing for negotiation.").

8 Instead, Plaintiffs' claims rest entirely on four alleged misstatements that Neumann made to

9 WeWork employees at meetings or during a media interview, none of which so much as

10 mentioned WeWork shares, much less "invited" listeners to buy them or explained how to do so.

11    These statements bear no resemblance to the types of misrepresentations in Section 25401

12 cases that survive a motion to dismiss.  Such cases typically involve securities offering documents

13 or sales solicitations.  *See, e.g.*, *Russian Hill Capital, LP v. Energy Corp. of Am.*, No. 15-cv-

14 02554, 2016 WL 1029541, at *1-2 (N.D. Cal. Mar. 15, 2016) (claim based on transcript of

15 presentation urging shareholders to participate in tender offer and explaining terms of tender

16 offer); *Alameda v. Nuveen Mun. High Income Opportunity Fund*, No. 08-cv-3137, 2009 WL

17 1424529, at *2 (N.D. Cal. May 20, 2009) (claim based on alleged misstatements in prospectus).

18 In discussing WeWork's growth, valuation, and balance sheet, Neumann was engaging in "mere

19 business conversations," which are not actionable under the Corporations Code.  *See* Cal. Dep't of

20 Corps., Commissioner's Op. No. 76/13C, 1976 WL 4003 (June 15, 1976) (quoting *B.C. Turf &*

21 *Country Club v. Daugherty*, 210 P.2d 760, 767 (Cal. Dist. Ct. App. 1949)).

22    **B.    Neumann Cannot Be Held Liable Because He Did Not Sell Securities.**

23    Count II also must be dismissed against Neumann because Plaintiffs do not allege that he

24 sold WeWork securities to them.  "[L]iability [under Sections 25401 and 25501] [i]s limited to

25 ***actual sellers***" of securities.  *S.E.C. v. Seaboard Corp.*, 677 F.2d 1289, 1296 (9th Cir. 1982)

26 (emphasis added).  Indeed, Plaintiffs' options exercise agreements make clear that they purchased

27 their WeWork shares directly from WeWork.  (Ex. 1, Ex. 2.)  Accordingly, Count II must be

28 dismissed as against Neumann.  *See Jackson v. Fischer*, No. 11-cv-2753, 2015 WL 1143582, at

*20 (N.D. Cal. Mar. 13, 2015) (dismissing claim against corporate agent who allegedly "made some statements that were false or misleading" because he was not "the actual seller" of the securities).

## VI.      PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY.

As Plaintiffs have failed to allege WeWork's liability under Sections 25401 and 25501 of the California Corporations Code, their claim of secondary "control person" liability against Neumann under Section 25504 necessarily fails.  It is well-settled that "in the absence of a viable claim of primary liability, [a] plaintiff cannot state a claim against the [director or officer] defendants . . . under § 25504 — particularly [when] the claims against [those] defendants are based solely on statements" that were not false or misleading when made. *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013).

## CONCLUSION

For the reasons set forth herein, the Court should dismiss the CAC in its entirety.

Dated:  November 3, 2020          CONRAD & METLITZKY LLP

By:    /s/ *Warren Metlitzky*
            Warren Metlitzky

Attorneys for Defendant THE WE COMPANY

KAUFHOLD GASKIN GALLAGHER LLP

/s/ *Steven Kaufhold*
            Steven Kaufhold

Attorneys for Defendant ADAM NEUMANN

## **ATTESTATION OF CONCURRENCE**

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.

DATED: November 3, 2020

*/s/ Warren Metlitzky*
Warren Metlitzky

NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT
CASE NO. 20-CV-03686-HSG